tion requiring the defendant to remove the building he has erected, so that it will stand at a proper distance from Peck street. Judgment accordingly.

(6 Misc. Rep. 233.)

## SPRINGFIELD FIRE & MARINE INS. CO. v. VILLAGE OF KEESE-VILLE.

(Supreme Court, Special Term, Clinton County. December, 1893.)

MUNICIPAL CORPORATIONS—SUPPLY OF WATER — DAMAGES FROM FIRE.

A village is not liable to an insurance company for the destruction of insured property by fire because of the insufficiency of the water supply to extinguish the fire.

Action by the Springfield Fire & Marine Insurance Company against the village of Keeseville. Defendant demurs to the complaint. Sustained.

Boynton & Mason, for plaintiff.
McLaughlin & Rowe, for defendant.

RUSSELL, J. The demurrer to the merits of the complaint concedes that the plaintiff suffered a loss of $4,150 by its insurance of the dwelling house of Mrs. Brewer, in the village of Keeseville, and the destruction of that house by fire, and that the building might have been saved, if the waterworks of the village had been in proper order. Is this neglect of the defendant negligence in law? The plaintiff claims that it is, and that it has a right to recover, because the defendant owed it a double duty; that it was, firstly, its duty to the plaintiff, as an insurance company paying a license fee for the part maintenance of the fire department of the village, and, secondly, because of the duty the village owed to Mrs. Brewer as a taxpayer, and a paying user of the water supply, that the fire protection of that supply should be in proper order for service. The plaintiff claims to have Mrs. Brewer's rights, not only by subrogation from its payment of the loss, but also by actual assignment.

There is no question but that the village is liable for neglect, in certain instances. It must maintain the streets so that the roadbed and sidewalks are in proper repair. The reason for this is obvious. It has the exclusive control of the streets. There is no element of private use about them, and it is essential to the safety of the public that the direct responsibility should be placed upon the authority which has the exclusive power to maintain; and the use of which streets is habitual and constant to all people frequenting that part, daytime and nighttime, in winter as well as summer. The plaintiff's argument returns at every point to the proposition that power to maintain for the habitual, or even the incidental, use, any structure or conveyances or organization, is commensurate and equivalent to a duty to maintain, and that necessarily the neglect of duty in any respect is negligence in law. If this argument is correct, the maintenance of a disorderly house, which the trustees may prevent, and which causes pecuniary injury; the omission of the police, whom the trustees can employ, to prevent a personal or

property injury which they might have prevented; the running at large of cattle, sheep, or horses, which causes an injury; the omission to light the streets a particular night, whereby an accident occurs; the want of skill of the fire-engine department in putting out a fire; or the improper action of the board of health, either by neglect or impolitic action, whereby an epidemic spreads,—are all causes which bring a charge of negligence to the village, upon which an action may be maintained. The law does not always recognize even legal duty as synonymous with such a legal obligation as to bring the liability for negligence in case of failure to perform. It would be practically impossible to do so. The courts are now perplexed to deal with cases of legal negligence; to know when, according to law, a case comes within the recognized limits, and when a question may be properly submitted to a jury. There must be a limit somewhere, and especially to the liability of a village, which acts within statutory bounds of power, which is fettered and hampered by statutory limits upon its taxing privileges, and whose corporate action is more largely a matter of convenience for its citizens than for any ultimate provision of compensation to them in case of loss, even in those matters in which the village may, as a corporation, act. I do not, therefore, think that the failure to maintain the waterworks system of the village in proper condition so that a court or jury might deem it possible or probable that fire could have been put out, with proper vigilance, by the parties who first discovered it, if the water supply had been sufficient, affords a cause of action to either the insurer or insured. Vanhorn v. City of Des Moines, 63 Iowa, 447, 19 N. W. 293; Black v. City of Columbia, 19 S. C. 412; Wheeler v. City of Cincinnati, 19 Ohio St. 19; Tainter v. City of Worcester, 123 Mass. 311; Mendel v. City of Wheeling, 28 W. Va. 233; Edgerly v. City of Concord, 62 N. H. 8; Fisher v. City of Boston, 104 Mass. 94. In this state it has been held that the actual wrongdoing of various agents of the different departments, such as the police, fire, and water departments, did not give a right of action against the municipality. Woolbridge v. Mayor, etc., 49 How. 67; Smith v. City of Rochester, 76 N. Y. 506; O'Meara v. Mayor, etc., 1 Daly, 425; Maxmilian v. Mayor, etc., 62 N. Y. 160. It can be readily seen, if we may look to results in demonstration of the feasibility of the rule, that a disastrous conflagration, comparatively like those at Chicago or Boston, might bankrupt a municipality, were it liable for negligence by omission like the one claimed. Judgment is ordered for defendant upon the demurrer, with costs.

Judgment for defendant.